UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 10-22124-CIV-HUCK/O'SULLIVAN

GREAT FLORIDA BANK,

      Plaintiff,

v.

COUNTRYWIDE HOME LOANS, INC.,
COUNTRYWIDE SECURITIES CORP.,
and BAC HOME LOANS SERVICING, LP
(f/k/a COUNTRYWWIDE HOME LOANS
SERVICING, LP),

      Defendant.

_____/

## ORDER GRANTING DEFENDANTS'
## MOTION TO DISMISS WITHOUT PREJUDICE

In response to the Court's October 13, 2010 Order dismissing Plaintiff's Second Amended Complaint without prejudice [D.E. #62], Plaintiff filed its Third Amended Complaint on November 8, 2010 against Defendants Countrywide Home Loans ("CHL"), Countrywide Securities Corporation ("CSC"), and BAC Home Loans Servicing [D.E. #69].  On December 6, 2010, Defendants filed a Motion to Dismiss Plaintiff's First Cause of Action for fraudulent concealment/fraudulent inducement, arguing (1) that the Economic Loss Rule limits Plaintiff's recovery to contractual remedies; (2) that allegedly fraudulent statements by CSC employees were mere puffery, not actionable fraud; (3) that Plaintiff fails to plead fraud with the requisite particularity because its allegations lump together Defendants and a non-party, making merely generalized allegations; and (4) that the Third Amended Complaint is a shotgun pleading that is deficiently pled [D.E. #77].  Additionally, in their Reply, Defendants argue (5) that Plaintiff's Third Amended Complaint improperly alleges facts based on "information and belief" without adequately setting forth facts supporting such conclusions [D.E. #92].

Below, the Court considers Defendants' arguments regarding pleading deficiencies in the Third Amended Complaint.  Because the Court finds that the Third Amended Complaint is

deficiently pled, the Court grants Defendants' Motion to Dismiss, and dismisses the Third Amended Complaint without prejudice. At this time, the Court declines to address Defendants' arguments regarding the Economic Loss Rule and puffery. The Court will consider these arguments, as well as other arguments previously briefed by the parties, *e.g.*, those based on *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383 (5th Cir. 2010), after the Fourth Amended Complaint is filed—presumably with more specific allegations that provide a more informative context for Plaintiff's claims—and after Defendants have had the opportunity to file their subsequent Motion to Dismiss.

## I.     FACTUAL BACKGROUND

The facts relevant to Defendants' Motion to Dismiss are virtually identical to those considered by the Court in its prior Order on Motion to Dismiss and Motion to Strike [D.E. #62]. *See Great Florida Bank v. Countrywide Home Loans, Inc.*, Case No. 10-CV-22124, 2010 U.S. Dist. LEXIS 109628 (S.D. Fla. Oct. 13, 2010). Plaintiff adds Defendant CSC to the Third Amended Complaint, alleging that CSC, through two employees—Bijan Gorji and Gary Johnson—acted as an agent for CHL. Plaintiff alleges that CSC is the broker-dealer arm of "Countrywide's" mortgage business; CHL originates and underwrites mortgage loans, and CSC sells pools of loans on the secondary mortgage loan market. Plaintiff's Third Amended Complaint defines "Countrywide" as comprising CHL, CSC, and non-party, corporate parent Countrywide Financial Corporation ("CFC").

Plaintiff also adds the allegation that "Countrywide" possessed documents that Plaintiff would have needed to re-underwrite the loans (*i.e.*, information necessary to discover the alleged fraud), but that Countrywide did not deliver the files for many of the purchased loans until May 2010. Plaintiff's allegations do not indicate whether Plaintiff requested these files before that time.

## II.     ANALYSIS

### 1.     Shotgun Pleading

Defendants argue that the Third Amended Complaint is a shotgun-style pleading that must be dismissed in its entirety. The Court finds that the Third Amended Complaint is a shotgun-style pleading as frowned-upon by the Eleventh Circuit. The Third Amended Complaint

2

also is inadequately pled because it fails to specify the misrepresentations upon which Plaintiff bases its claim for fraudulent concealment/fraudulent inducement.

A shotgun-style complaint in one that "incorporates all of the general factual allegations by reference into each subsequent claim for relief." *Ferrell v. Durbin*, 311 Fed. App'x. 253, 259 (11th Cir. 2009) (unpublished decision). This Court previously has noted that such a form is disfavored as "unhelpful and poorly drafted[,]" and that experience "'teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice.'" *Paramo v. IMICO Brickell, LLC*, No. 08-20458-CIV, 2008 WL 4360609, at *8 (S.D. Fla. Sept. 24, 2008) (quoting *Anderson v. District Board of Trustees of Central Florida Community College*, 77 F.3d 364, 367 (11th Cir. 1996)).

Although perhaps not as egregious as other shotgun pleading cases, the basic form of Plaintiff's Third Amended Complaint is the same as those criticized by the Eleventh Circuit. Each cause of action "realleges the foregoing allegations as if fully set forth herein," such that the Second Cause of Action incorporates the First, the Third Cause of Action incorporates the First and Second Causes of Action, and so on, through the five causes of action. The result is that this Court must "sift out irrelevancies, a task that can be quite onerous." *Strategic Income Fund, LLC. v. Speak, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002).

Of more concern is the manner in which Plaintiff pleads the First Cause of Action. The Court is not required "to parse the complaint searching for allegations of misrepresentations that could conceivably form the basis" for Plaintiff's claims. *Ferrell*, 311 Fed. App'x at 259. Yet, this apparently is what Plaintiff expects of the Court. Between the start of the Third Amended Complaint and the First Cause of Action for fraudulent concealment/fraudulent inducement lie 142 paragraphs containing allegations related—or at least somewhat related—to Plaintiff's claims. However, in the First Cause of Action, Plaintiff neglects to reference with any specificity the allegations supporting that cause of action. The First Cause of Action alleges two claims, one based on false statements by Defendants, and another based on fraudulent omissions. Despite this, Plaintiff does not specify in the paragraphs of the First Cause of Action which of Defendants' statements were false, or which omissions were fraudulent. Instead, Plaintiff leaves

the Court to parse the previous 142 paragraphs in an attempt to guess at which statements support these various theories.  Even if the Court is able to discern which statements support the cause of action, Defendants are prejudiced by the uncertainty regarding which specific statements support the First Cause of Action.  *See Paramo*, 2008 WL 4360609, at *8.

### 2.    Lumping Together Defendants

Defendants also allege that Plaintiff inadequately pleads fraud pursuant to Rule 9(b) of the Federal Rules of Civil Procedure because the allegations in the Third Amended Complaint improperly lump together Defendants CHL and CSC, and non-party CFC.  For the reasons discussed below, the Court agrees with Defendants.

Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  The Eleventh Circuit has found that Rule 9(b) is satisfied if a complaint sets forth

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and
> (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and
> (3) the content of such statements and the manner in which they misled the plaintiff, and
> (4) what the defendants obtained as a consequence of the fraud.

*Ziemba v. Cascade International, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Brooks v. Blue Cross and Blue Shield of Florida*, 116 F.3d 1364, 1371 (11th Cir. 1997)).  The cases that the parties cite indicate that, in light of these requirements, when alleging fraudulent conduct and statements, a plaintiff may not lump together defendants when it will obscure the identity of the party that has committed the alleged act.  *See Centrifugal Air Pumps Australia v. TCS Obselete, LLC*, No. 6:10-cv-820-Orl-31DAB, 2010 WL 3584948, at *2 (M.D. Fla. Sept. 9, 2010) (criticizing the practice of "lumping" when it rendered "the factual underpinnings of the [c]omplaint practically incomprehensible" and created a conflicting description of events); *Cordova v. Lehman Brothers, Inc.*, 526 F. Supp. 2d 1305, 1313 (S.D. Fla. 2007) ("Rule 9(b) does not allow a complaint to merely 'lump' multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant

4

separately of the allegations surrounding his alleged participation in the fraud.'") (alteration in original) (quoting *Bruhl v. PricewaterhouseCoopers International*, No. 03-23044-Civ, 2007 WL 997362, *3 (S.D. Fla. March 27, 2007)); *see also Gastaldi v. Sunvest Communities USA, LLC*, 637 F. Supp. 2d 1045, 1059 (S.D. Fla. 2009) (finding that the plaintiffs did not inappropriately "lump" defendants when the plaintiffs clearly delineated the statements attributed to the individual defendants); *National Numismatic Certification, LLC v. eBay, Inc.*, No. 6:08-cv-42-Orl-19GJK, 2008 WL 2704404, at *16 (M.D. Fla. July 8, 2008) (same).

In the allegations of the Third Amended Complaint, Plaintiff frequently lumps together Defendants CHL and CSC, and non-party CFC, in a way that obscures the identity of the party or parties that are alleged to have actually committed the fraudulent actions.  Plaintiff attributes allegedly fraudulent statements or omissions to particular individuals only when referring to statements or omissions made by CSC employees Gorji and Johnson.  (*See* Third Am. Compl. ¶¶ 40, 60, 63.)  Although there are several instances where Plaintiff alleges specific fraudulent statements made by these individuals, many of Plaintiff's allegations refer generically to conduct by "Countrywide."  Plaintiff refers to the defined term "Countrywide" more than 100 times in the Third Amended Complaint.  Many of these references are pled in way that makes it impossible for Defendants to know which of the Defendants is alleged to have made the claimed statements. Paragraph 39 of the Third Amended Complaint illustrates this problem.

> 39.    At all relevant times, Countrywide held itself out to be a prudent mortgage originator.  Countrywide represented that (a) it had strict underwriting guidelines in place; (b) loans it purchased from third parties were underwritten to guidelines materially in conformity with Countrywide's guidelines; and (c) it utilized among other quality controls, sophisticated computerized systems . . . to analyze applicant loan data and reduce the risk of default on Countrywide-originated or underwritten loans.

In reading Paragraph 39, the reasonable reader cannot tell whether Plaintiff is attributing the statements regarding underwriting practices to CHL, CSC, or even non-party CFC.  Plaintiff's knowledge that such statements were made belies the possibility that Plaintiff is unaware which

of the Defendants made the statements.  Therefore, Plaintiff should make these and other similarly vague allegations with specificity.

      3.      **Agency Relationship Between CHL and CSC**

Plaintiff alleges that CSC employees Gorji and Johnson were acting as agents of CHL when they negotiated the sale of loans to Plaintiff.  Defendant does not object to this characterization.  Therefore, because the dismissal is without prejudice with leave to amend, the Court notes *sua sponte* that the Third Amended Complaint fails to allege facts supporting the existence of an agency relationship between CHL and CSC.

To demonstrate an actual agency relationship, a plaintiff must allege (1) that the principal acknowledges the reputed agent was acting as its agent; (2) the reputed agent accepts that undertaking; and (3) control by the principal over the agent's day-to-day activities during the course of the agency relationship.  *Ocana v. Ford Motor Co.*, 992 So.2d 319, 326 (3d Fla. Dist. Ct. App. 2008).  Moreover, to allege an apparent agency relationship, a plaintiff must demonstrate facts showing "(1) a representation by the purported principal; (2) reliance on that representation by a third party; and (3) a change in position by the third party in reliance on the representation."  *Id*.

Other than the conclusory statement that Gorji and Johnson were acting as agents of CHL, Plaintiff alleges no facts supporting the legal conclusion that CSC is the actual or apparent agent of CHL.  Plaintiff's theory of liability as to CHL revolves around allegedly fraudulent statements and omissions by Gorji and Johnson.  Without establishing an agency relationship, Plaintiff cannot hold CHL responsible for the allegedly fraudulent actions of CSC employees Gorji and Johnson. Plaintiff alleges that CHL is affiliated with CSC, and both are owned by parent, holding company CFC.  Plaintiff further alleges that CHL originates and underwrites mortgage loans, and that CSC then sells these pools of loans.  At most, these facts suggest that CHL and CSC were agents for non-party CFC; they do not support the conclusion that CSC was the agent for CHL.  Thus, Plaintiff fails to adequately plead the existence of an agency relationship between CSC and CHL.  As discussed in the next section, the allegations regarding Gorji and Johnson are the lynchpin of Plaintiff's claim regarding fraudulent conduct and

omissions.  Therefore, Plaintiff's failure to plead facts establishing an agency relationship may be fatal to the First Cause of Action as to Defendant CHL.

**4.      Pleading Based on "Information and Belief"**

Finally, in their Reply, Defendants argue in a footnote that Plaintiff improperly alleges facts in the Third Amended Complaint based on "information and belief."  (*See* D.E. #92, at 3 n.2.)  Plaintiff has not had the opportunity to respond to this argument.  While new arguments generally are not permitted in a Reply, this one merits consideration, given that the Court is dismissing the First Cause of Action without prejudice with leave to amend.  Upon examination of the Third Amended Complaint, the Court finds that, by pleading based on "information and belief" without adequately setting forth supporting facts on which the belief is founded, Plaintiff improperly utilizes "information and belief" pleading, and fails to satisfy Rule 9(b)'s heightened pleading standard.

When Rule 9(b) applies, "pleadings generally cannot be based on information and belief[.]"  *United States v. Clausen*, 290 F.3d 1301, 1310 (11th Cir. 2002) (quoting *United States v. Stinson, Lyons, Gerlin & Bustamante, P.A.*, 755 F. Supp. 1040, 1052 (S.D. Ga. 1990)).  However, Rule 9(b)'s heightened pleading standard is applied less stringently when specific factual information about the details of the fraud are peculiarly within the defendants' knowledge or control.  *Holy Cross Hospital*, 510 F. Supp. 2d at 1033 (quoting *Hill v. Morehouse Medical Associates, Inc.*, Case No. 02-14429, 2003 WL 22019936, at *3 (11th Cir. Aug. 15, 2003) (unpublished decision)).  In that situation, pleading based on "information and belief" is appropriate only when the complaint adduces "specific facts supporting a strong inference of fraud[.]"  *Stinson*, 755 F. Supp. at 1052 (quoting *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990)).  Therefore, "[b]ald or otherwise conclusory allegations will not suffice."  *Stinson*, 755 F. Supp. at 1052.  The complaint must set forth "supporting facts on which the belief is founded[.]"  *Id*. (citing *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st. Cir. 1985)); *see Ferrell*, 311 Fed. App'x at 259 n.8 (finding several instances where the appellants, when pleading based on "information and belief," failed to allege with particularity any factual basis on which the information and belief was founded, and failed "to allege with particularity facts giving rise to a strong inference" that the defendant intended to deceive the plaintiffs).  Finally, [t]he

complainant must be able to connect the allegations of fraud to the defendant.  *Stinson*, 755 F.

Supp. at 1052.

  The Court finds that Plaintiff improperly uses "information and belief" pleading because

it fails to allege with particularity facts giving rise to a strong inference of Defendants' fraudulent

intent.  Therefore, Plaintiff fails to satisfy Rule 9(b)'s heightened pleading standard.  Plaintiff

alleges facts based on "information and belief" more than 30 times in the Third Amended

Complaint.  Many of those allegations allege facts regarding Defendants' fraudulent intent.  The

following paragraphs are but a sampling of these allegations.

> 60. Upon information and belief, CSC, by Gorji and Johnson,
> knew that CHL did not properly underwrite or conduct
> quality control on the loans to be sold to Great Florida
> when they made false statements to Great Florida in April
> 2006.
> . . .
> 63. Upon information and belief, CSC, by Gorji and Johnson,
> knew that the loans were not non-conforming loans and that
> some loans were falsely described as full doc.  To induce
> Great Florida to conduct only a limited review of a small
> number of the loans, CSC, by Gorji and Johnson, falsely
> represented [that] the loans were primarily non-conforming,
> full doc loans and concealed CHL's abandonment of its
> origination and underwriting standards.
> . . .
> 71. Upon information and belief, one or more persons at CHL
> or CSC intentionally caused the loans to be falsely
> designated as non-conforming and/or full doc for the
> purpose of fraudulently marketing and selling them to third
> parties such as Great Florida.

Throughout these "information and belief" allegations, Plaintiff makes conclusory statements

regarding Defendants' knowledge and fraudulent intent.  However, Plaintiff fails to set forth

specific facts supporting these inferences.  *See Stinson*, 755 F. Supp. at 1052.  For example, in

Paragraphs 60 and 61, Plaintiff alleges that Gorji and Johnson knew that CHL did not properly

underwrite the loans and that the loans did not meet the agreed-upon criteria.  But, this appears to

be mere guesswork by Plaintiff.  Plaintiff pleads no facts leading to the inference that Gorji and

Johnson were personally involved in or had specific knowledge regarding the underwriting

process, or knew that the underwriting process and loans were materially deficient.[1]  In fact, based on the facts alleged in the Third Amended Complaint, it appears equally likely that Gorji and Johnson themselves were in the dark regarding these deficiencies, except for Plaintiff's bald "information and belief" assertion that they were not.  There is no allegation that either Gorji or Johnson inspected the loans or reviewed CHL's underwriting process prior to completing the deal.  Nor does Plaintiff allege that Gorji and Johnson, as CSC employees, had any exposure to the loan underwriting and selection process at CHL, a separate corporation.  In similar circumstances, the Eleventh Circuit has found "information and belief" allegations inadequate to create the strong inference of the intentional falsity of a statement when the plaintiffs pled no more than the mere existence of the false statement.  *See Ferrell*, 311 Fed. App'x at 259 n.8.

Paragraph 71 is another example of similarly flawed allegations.  Knowing that the loans it received from CHL were materially deficient, Plaintiff apparently seeks to have the Court infer that fraud is the reason for that material deficiency.  However, Plaintiff cites no facts leading the Court to the specific inference that "one or more persons at CHL or CSC intentionally caused the loans to be falsely designated as non-conforming and/or full doc for the purpose of fraudulently marketing and selling them to third parties such as Great Florida."  All that the reasonable reader knows from the Third Amended Complaint is that Gorji and Johnson had a role in selling loans that Plaintiff alleges were materially deficient, and that at some earlier point those loans were mischaracterized as non-conforming, full doc loans.  These are not specific allegations giving rise to a strong inference of fraudulent intent sufficient to satisfy Rule 9(b).

The Third Amended Complaint is replete with similar allegations based on "information and belief."  However, none of these allegations state facts creating a strong inference that any individual at CSC or CHL had fraudulent intent.  It appears that Plaintiff's goal is to link this case to previous litigation against top executives from non-party CFC by reference to newspaper articles and pleadings from other cases. (*See e.g.*, Third Am. Compl. ¶¶ 44–58.)  Given that

---

[1]     Plaintiff alleges that Gorji and Johnson's made assurances regarding "Countrywide's" loan quality and underwriting process.  (*See* Third Am. Compl. ¶ 40 ("In April 2006, Gorji and Johnson specifically assured Laurash [of Great Florida] of the truth of such statements by stating that Countrywide had excellent underwriting and quality control procedures in place and that Countrywide conducted quality control on the loans it sold to third parties.").)

Plaintiff has pled essentially these same facts in the Second and Third Amended Complaints, it appears that Plaintiff may be unable to supply more specific allegations sufficient to meet the 9(b) pleading standards.  The Court notes that its dismissal of the First Cause of Action without prejudice and with leave to amend is subject to the requirements of Rule 11 of the Federal Rules of Civil Procedure.

**III.     CONCLUSION**

For the reasons discussed above, the Court agrees with Defendants that the Third Amended Complaint contains numerous pleading deficiencies.  These are the type of deficiencies that Plaintiff may be able to correct in a Fourth Amended Complaint.  Therefore, the Court grants Defendants' Motion to Dismiss, and dismisses the First Cause of Action without prejudice with leave to amend.  If Plaintiff intends to file a Fourth Amended Complaint, it must do so **on or by Friday, February 18, 2011**.  The Court will allow Plaintiff no further opportunity to amend.

DONE AND ORDERED in Chambers, Miami, Florida, on February 3, 2011.

Paul C. Huck
United States District Judge

**Copies furnished to:**
All Counsel of Record